**Lucy STONE, Plaintiff,**

v.

**Wilbur J. SCHMIDT, Individually and as Secretary of the Department of Health and Social Services of the State of Wisconsin, et al., Defendants.**

**No. 75–C–318.**

United States District Court,
W. D. Wisconsin.

Aug. 1, 1975.

■■■■■■■■■■■■

———◆———

Richard J. Lipson, Corrections Legal Services Program, Madison, Wis., for plaintiff.

Bronson C. LaFollette, Atty. Gen., State of Wisconsin by Robert D. Repasky, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an action for declaratory, injunctive and monetary relief. The plaintiff is an inmate at the Wisconsin Home for Women at Taycheedah, Wisconsin (hereinafter "Taycheedah"). The defendants occupy the positions in the government of the State of Wisconsin described in the heading of this case. Plaintiff has moved for a preliminary injunction and it is to this motion that the present opinion and order are addressed. The complaint alleges that in late May 1974 and again on and after June 18, 1975, plaintiff refused to execute a certain form entitled "Authorization to Examine Mail" and that because of her refusal to execute the authorization, defendants have refused to allow her to send or receive items of mail. Plaintiff alleges that this conduct on the part of the defendants violates the Constitution of the United States.

Jurisdiction is present. 28 U.S.C. Sec. 1343(3) and 42 U.S.C. Sec. 1983.

For the purpose of the plaintiff's motion for preliminary injunction, and for no other purpose, I find as fact those matters set forth hereinafter under the heading "Facts."

### Facts

In late May, 1975, and continuously thereafter, plaintiff has been confined as an inmate in Taycheedah. In late May, 1975, the defendants Lewis McCauley and Rebecca Botts presented plaintiff with a form entitled "Authorization to Examine Mail." The said form read as follows:

### AUTHORIZATION TO EXAMINE MAIL

I, ..............., an inmate of the Wisconsin Home for Women, hereby authorize the superintendent of said institution, or designated agent, to open and examine all letters, papers, parcels or other material addressed to me by mail or otherwise; to deliver to me only such material as is deemed proper; and to destroy or dispose of in any manner material which is deemed improper or prejudicial to the security, discipline or welfare of the institution.

Signed ..............
Date ...............

———◆——

At the time the said authorization was presented to the plaintiff she was informed by the defendants that if she did not sign the authorization, she would not be permitted to send or receive mail. Plaintiff refused to sign the authorization and has continued to refuse to sign it. Because of her refusal to sign the authorization, defendants have refused, and they continue to refuse, to allow the plaintiff to send or to receive items of mail, although at their discretion they have permitted some correspondence to pass through. Plaintiff's opportunity to

send and to receive items of mail has been, and is, more restricted than if she had signed the authorization.

At some time on or after June 18, 1975, defendants again presented plaintiff with an authorization form and requested her to sign it. They informed the plaintiff that if she did not sign the authorization she would not be permitted to send or receive mail. The form read as follows[1]:

### AUTHORIZATION AND DESIGNATION OF AGENT

The undersigned _____ hereby authorizes the
            (name of resident)
_____ to receive from the United States
    (name of correctional institution)
Postal Service all letters, packages and other items addressed to me at
Box _____, _____, Wisconsin, a general post
        (institution box number and city)
office box maintained and paid for by the institution for transmittal to me in accord and pursuant to the provisions of Wisconsin Division of Corrections' Rule 4.13 and the correspondence practice, procedure, and policy in effect for inmates of the institution; and I hereby appoint the Warden or Superintendent of the institution or his designee as my agent for the receipt of postal items so addressed to me and to post in accordance with the provisions of said Rule 4.13 items I desire to send to others outside the Wisconsin State Prisons, except the following persons or entities:

NOTICE: Items posted from persons or entities listed above as exceptions to this authorization will not be accepted from the United States Postal Service by the institution warden or his designee unless addressed as follows:

    To _____
        (name of warden or superintendent)
    At _____
        (name of correctional institution)
    _____
        (city, state and zip code of institution)
    For _____
        (name of resident)

———————◆———————

Plaintiff refused to sign the second authorization form and continues to refuse to sign it. Because of her refusal to sign the latter authorization, defendants have refused, and continue to refuse, to permit the plaintiff to send or to receive items of mail, although at their discretion they have permitted some correspondence to pass through. The opportunity of the plaintiff to send and to receive items of mail has been, and is, more restricted than if she had signed the authorization.

Some degree of inspection and monitoring of incoming and outgoing mail

1. It is not entirely clear from the record whether the form presented to plaintiff on or after June 18, 1975, was the same form which had been presented to her in late May or the form which I am finding, in the text, to have been the one presented to her on or after June 18. But my finding is based on inferences from the record which are persuasive to me.

serves the institutional needs of Taycheedah with respect to the introduction of weapons and drugs and with respect to prevention of escape.

Each of the penal institutions of the State of Wisconsin, including Taycheedah, maintains a post office box. Mail addressed to an inmate at the particular institution is delivered to the institutional post office box. It is then transported to the office of the institution by correctional officers. At that stage certain procedures are followed which are set forth in Section 4.13 of the Division of Corrections Manual of Adult Institution Procedures. Mail which an inmate desires to send to persons outside the institution must be delivered by the inmate to correctional officers. At that stage certain procedures are followed which are set forth in Section 4.13.

Prior to about June 18, 1975, neither the said Section 4.13 nor any other statute or written regulation of the state of Wisconsin contained any provision requiring an inmate to execute either of the two authorization forms set forth earlier in this opinion or any similar authorization form. On or about June 18, 1975, Section 4.13 was amended by the addition of the following provision:

It shall be a condition precedent to any inmate being permitted to receive delivery of letters, parcels, packages, publications or any other post or mail addressed or forwarded to him at any state correctional institution, or any other institution to which he may be transferred or removed while in the legal custody of the Department of Health and Social Services, Division of Corrections, that he or she shall execute, sign and keep in force and effect at all relevant times a written authorization upon forms to be furnished by the Division of Corrections and its authorized employees shall be

designated as agent for and constructive addressee of the inmate for the purpose of receiving all letters, parcels, packages, publications and other post or mail addressed to the inmate and forwarded to the institution where he is in custody and authorizing the Division of Corrections or its designated employees to open and inspect the same in accord with the guidelines hereafter set forth and the individualized reasonable regulations which may be adopted by the institution.

Also, on or about June 18, 1975, the defendant Lewis McCauley notified the staff and inmates at Taycheedah that an inmate who refused to execute the authorization would not be permitted to receive delivery of any letters, parcels, packages, publications and other post or mail addressed to or forwarded to the inmate at Taycheedah. He also informed the staff and inmates that such items would be returned to the sender, but that they would be held for one week before being returned, so as to give the inmate an opportunity to execute the authorization.

At Taycheedah, the failure or refusal to sign the authorization results in a prohibition against the receipt of any mail by the inmate and, in the case of the plaintiff in this action, has resulted in a prohibition against delivering her outgoing mail to the United States Postal Service.[2]

The defendants will continue to refuse to permit the plaintiff to receive incoming mail and will refuse to deliver her outgoing mail to the United States Postal Service, unless and until she executes the authorization form which was presented to her on or after June 18, 1975. The resulting injury to the plaintiff will be irreparable. No adequate remedy at law exists.

2. Section 4.13 appears to apply to all adult penal institutions of the State of Wisconsin, but the record to date does not permit a finding concerning the consequences which flow to inmates other than those at Taycheedah if they fail or refuse to sign the authorization.

## Opinion

Among the federal constitutional questions presented by this motion are these:

(1) Under the circumstances of this case, may defendants compel the plaintiff affirmatively to "authorize" them: (a) to perform acts beneficial to the plaintiff which the defendants are already constitutionally obliged to perform; and (b) to perform acts injurious to the plaintiff which the defendants are already constitutionally free to perform?[3]

(2) Assuming that the answer to (1)(a) or (1)(b), or both, is affirmative, may such compulsion be achieved by threatening or applying as a sanction for refusal, the denial of a right which itself enjoys the highest order of federal constitutional protection?

## The first question

The right to communicate with others through written messages is protected by the First and Fourteenth Amendments and this right is enjoyed by persons who have been convicted of crime and imprisoned. Although neither the federal nor state government may be required to provide postal service, when the federal government chooses to provide it generally through its Postal Service, the First Amendment guarantees the right to send and receive written communications through that Service. *Lamont v. Postmaster General*, 381 U.S. 301, 305, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).

If plaintiff had not been convicted of crime and imprisoned, she would be free to place her outgoing letters in a United States mailbox for delivery to the addressees, and to have mail addressed to her delivered to her home by the Postal Service or placed by the Postal Service in a box rented by her in the local post office. Except for a qualification which I will address in a moment, the initial proposition is that the defendants are obliged by the federal constitution to provide the plaintiff with an arrangement for sending and receiving mail, which arrangement is the functional equivalent of the opportunities she would enjoy if she were not imprisoned. That is, because they have prevented the normal flow of mail from and to the plaintiff by the act of imprisoning her, they are constitutionally compelled to implement that normal flow by supplementing the service of the Postal Service.

The qualification to which I have referred is major, of course. It has been held that because a person is an inmate of a prison, the inmate's keepers may constitutionally interfere with the normal flow of mail to and from the inmate if, when challenged in court, the keepers can meet a certain burden of justification for the particular act or acts of interference. For the purpose of deciding the first question raised by plaintiff's motion, I will assume that if challenged in court, the defendants could meet the burden of justification with respect to every act of interference authorized by Section 4.13 (for example, opening certain sealed envelopes, opening certain unsealed envelopes, inspecting certain envelopes for "contraband," "monitoring" (reading) the contents of certain envelopes, refusing to deliver certain incoming mail to an inmate, refusing to deliver certain outgoing mail to the Postal Service).

To facilitate analysis, I will expressly delineate between the two categories of activities by the defendants to which I have referred. I will describe one category as "implementing normal flow" and describe the other as "interfering with

---

3. In the view I take of the case, it is unnecessary to reach the question, to which a negative answer seems clearly required in any event, whether the defendants may compel plaintiff affirmatively to authorize them to perform acts injurious to the plaintiff which the defendants are constitutionally forbidden to perform.

normal flow." Within the category of "implementing normal flow," I include: (a) as to incoming mail, receiving it in the institutional United States post office box, removing it from that box and transporting it to the office or mail room within the institution, and delivering it within the institution to the addressed inmate; and (b) as to outgoing mail, receiving it from the inmate at the inmate's cell or at a mail room or office within the institution, and delivering it to a United States mail box or to a representative of the United States Postal Service for delivery through the mails to the designated addressee. Within the category of "interfering with normal flow," I include the procedures provided for in Section 4.13.

Had the defendants not precipitated the present impasse by demanding that the plaintiff sign the authorization form, we must assume that because they are required by the Constitution to perform the activities falling within the category of "implementing normal flow," defendants would be doing so. Also, we must assume that defendants would be performing those particular activities falling within the category of "interfering with normal flow" which the federal and state constitutions permit, which Section 4.13 permits and which defendants consider necessary or desirable. But the fact is that defendants have made the demand, plaintiff has refused, defendants have applied a sanction because of the refusal, and the court is obliged to bring to the controversy the method of analysis required by the Supreme Court of the United States and the Court of Appeals for this circuit.

The initial task is to identify and to evaluate the individual interest or interests asserted by the plaintiff. Although they are similar, I believe that the plaintiff is asserting two distinct individual interests.

■■ One is an interest in refraining from affirmatively authorizing governmental officers to perform activities beneficial to the plaintiff which the officers are already constitutionally compelled to perform. This interest seems wholly natural and rational, but difficult to identify in constitutional terms. I conclude that it is a First Amendment interest; that is, freedom of expression embodies freedom to be silent. Although I identify the interest as a First Amendment interest, it is difficult to place great value upon it in this context. In practical terms the cost to the plaintiff does not appear heavy if she were to forego her freedom to remain silent by expressly authorizing defendants to implement the natural flow of her correspondence. Without deciding that this particular individual interest of the plaintiff is not fundamental, I am nevertheless prepared to assign to the government only the mild burden of showing that the requirement is rationally related to a legitimate governmental purpose.

■ The second individual interest at stake is an interest in refraining from affirmatively authorizing governmental officers to perform activities injurious to the plaintiff which the officers are constitutionally permitted to perform. I conclude that this is a First Amendment interest, namely, freedom to be silent. I also conclude that it is fundamental. Although I have assumed for the purpose of deciding plaintiff's motion that the interference with the normal flow of correspondence permitted by Section 4.-13 is also permitted by the Constitution, defendants are not required to exhaust those powers of interference. Plaintiff has a fundamental interest in refraining from signing an authorization which may encourage such interference in any degree. With respect to this individual interest, I assign to the defendants the burden of showing a compelling governmental interest in requiring the plaintiff to sign the authorization.

Counsel for the defendants has offered three possible governmental interests which may be served by the requirement that plaintiff sign the authorization form.

The first suggestion is that the state has a legitimate interest in protecting its officers from being subjected to claims and contentions by inmates. Presumably, this interest would reach only to unfounded claims and contentions. Presumably, too, it would reach only to the assertion of such claims and contentions in an administrative forum or in the courts; the correctional officers suffer no tangible detriment when inmates express such claims and contentions without acting upon them by commencing some kind of proceeding. Whatever the effect that signing an authorization might have upon the outcome of a proceeding in which an inmate asserts a claim or contention concerning his or her correspondence, the inmate would remain free to commence it and the correctional officers involved would be obliged to respond to it. Conceivably, proceedings might be commenced less frequently by inmates who had signed the authorization than by those who had not, but this is wholly speculative. Conceivably, also, it might be considered legitimate for the state to interest itself in protecting its correctional officers from proceedings in which inmates assert claims and contentions relating to the activities of the correctional officers in implementing the flow of correspondence, as contrasted with interfering with the flow of correspondence. But the authorization form is not so limited. In any event, I conclude that the State of Wisconsin has no legitimate interest in attempting to protect its officers from the assertion of claims and contentions against them in proceedings initiated against the state's correctional officers by inmates, whether as to activities implementing the flow of correspondence or as to activities interfering with the flow.

The second suggestion is that the state has a legitimate interest in providing to inmates a formal notification that mail received by them at the address of the institution will be subject to monitoring or examination. Perhaps so, but this interest can obviously be served by a simple notice to the inmates; it is unreasonable to attempt to serve it by the device of requiring inmates to execute "authorizations" of any kind.

The third suggestion is that the state has a legitimate interest in protecting its correctional officers from prosecution under a state statute, Wis. Stat. Sec. 942.05, which makes it a crime for a person to open any sealed letter, knowing that he or she does not have consent to do so. Apparently this justification is offered seriously by counsel for the defendants. In Sec. 942.05 the State of Wisconsin is asserting its interest in protecting persons within the state from having their sealed letters opened without their consent; it is difficult to see how this state interest is served by compelling persons to authorize the opening of their letters. Wis. Stat. Sec. 53.09 vests authority in correctional officers to interfere with the free flow of inmates' correspondence; how Sec. 942.05 and Sec. 53.09 are to be reconciled is, of course, a matter for the courts of Wisconsin. The state has no legitimate interest in resolving its statutory problems by compelling inmates to execute authorizations.

### The second question

Because I have concluded that the state has no legitimate interest in requiring plaintiff to sign the authorization form, no sanction of any kind may be imposed upon plaintiff for her refusal to sign it, and it is not necessary to reach the second question. However, the reasons for the state's decision to require the signing of the authorization have proved so ineffable that I am apprehensive that they may not have been adequately presented to the court. For this reason I will make an assumption that the state's interest in requiring plaintiff to sign the authorization form is not only legitimate but is compelling, and I will consider the second question: whether the state may seek to vindicate its interest by applying the particular

sanction of depriving plaintiff of her right to send and receive mail.

If plaintiff's authorization were necessary to permit defendants' activities in implementing the flow of her correspondence, there might be a measure of rationality in responding to her refusal by refraining from implementing the flow.

Also, if plaintiff's authorization were necessary to permit defendants' activities in interfering with the flow of her correspondence within constitutional limits, there might be a measure of rationality in responding to her refusal by refraining from implementing the flow, thus crudely barring the bad with the good.

But as discussed above, plaintiff's authorization is not necessary to permit either category of defendants' activities. Thus, the decision to deprive her of her right to send and receive mail can be viewed only as a decision to apply a sanction comparable to other possible sanctions such as segregation or the loss of other "privileges."

In *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Court examined the rights of outsiders to correspond with prisoners, and it decided the outsiders enjoyed a First Amendment right to participate in such correspondence. In preventing plaintiff from writing to others, defendants are invading the First Amendment rights of the others. In preventing others from writing to plaintiff, defendants are invading the First Amendment rights of the others.[4] Under *Procunier* such invasions must be justified by the defendants in this lawsuit by showing first, that the invasion furthers one or more of the governmental interests of security, order and rehabilitation, and, second, that the invasion is no greater than necessary to the protection of the particular governmental interest involved.

■ Although I am now assuming, for the purpose of deciding plaintiff's motion, that the state has a compelling interest (not yet identified) in requiring plaintiff to sign the authorization form, I now find that the state has suggested no interest whatever in security, order or rehabilitation which is furthered by preventing plaintiff from sending out mail to all others, or by preventing all others from sending mail into the plaintiff, or by requiring all others to address their mail to the warden "for" plaintiff.

Finally, even if yet another monumental assumption were to be indulged in, to the effect that some interest in security or order or rehabilitation is furthered by these invasions of the First Amendment rights of others, the state has made no showing whatever that these invasions are no greater than necessary to the protection of the particular governmental interest involved.

### Other Matters

■ Plaintiff's motion seeks preliminary injunctive relief with respect to:

the monitoring of plaintiff's correspondence with elected officials including a certain state senator;

interference with plaintiff's correspondence with persons associated with a publication called "The Outlaw," and with plaintiff's receipt of the publication itself; and

interference with letters to and from the plaintiff containing legal advice, including correspondence with a certain Frank Scott.

4. In oral argument counsel for the defendants has represented that defendants will return to the senders correspondence addressed to plaintiff, together with an explanation that the senders may resubmit the correspondence only by addressing it to the warden "for" the plaintiff. There is no support for this representation in the record, but of course I consider it a good faith representation of counsel's understanding of his clients' intended course of action. To compel a nonprisoner to address a letter to a warden, however, is a significant invasion of a nonprisoner's First Amendment freedom.

It appears that defendants have recently revised their regulations and practices to remove the challenged restrictions upon correspondence between inmates and state legislators. Plaintiff has not as yet made a showing as to The Outlaw and as to Frank Scott sufficient to support interlocutory injunctive relief. Plaintiff is not foreclosed from renewing her request for such relief.

### Three-judge court

It appears that the requirement that inmates sign authorizations such as that challenged in this suit has recently been embodied in an administrative regulation applicable to all adult penal institutions. Section 4.13(A), Wisconsin Division of Corrections' Manual of Adult Institutions Procedures (revised June 1975). However, on the present record, it is not shown what sanctions are applied, except to this plaintiff at Taycheedah, for refusal to sign the authorization. Since the relief sought is to enjoin the imposition of sanctions for the refusal to sign the authorization, there is an insufficient basis for determining whether the convening of a three-judge court is required.

I conclude that plaintiff has shown that there is no adequate remedy at law for the injury with which she and her correspondents are directly threatened, that the injury will be irreparable, and that she has a reasonably good chance ultimately to succeed with the lawsuit. I also conclude that the issuance of the injunction will adversely affect the interests of the defendants in no way.

### Order

It is hereby ordered that:

1. Until further order of the court, each of the defendants, their agents and persons acting in concert with them, are enjoined from refraining to implement the flow of plaintiff's correspondence, or from interfering with the flow of plaintiff's correspondence, in any manner which differs from the manner in which they handle the correspondence of inmates at Taycheedah who have signed the authorization form set forth in the exhibit to the affidavit of Andrew W. Basinas, dated July 23, 1975, on file herein, or any substantially similar authorization form.

2. Until further order of the court, each of the defendants, their agents and persons acting in concert with them, are enjoined from threatening plaintiff with any sanction, or from applying to plaintiff any sanction, by reason of her refusal to sign any authorization described in paragraph 1, above.

3. Except as provided in paragraphs 1 and 2, above, plaintiff's motion for a preliminary injunction is denied.

4. Within seven days from entry of this order, counsel for the defendants is to serve and file a statement of the defendants' views whether the convening of a three-judge court is required in this case. Within five days from receipt of such statement, counsel for the plaintiff is to serve and file a statement of plaintiff's views on the question.